UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LEAMON POUNCY                                CIVIL ACTION NO. 08-cv-0787

VERSUS                                       JUDGE HICKS

WARDEN, LOUISIANA STATE                      MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

Leamon Pouncy ("Petitioner") was convicted of second degree murder after a jury trial in Caddo Parish, Louisiana. The conviction was affirmed on direct appeal. State v. Pouncy, 862 So.2d 387 (La. App. 2d Cir. 2003), writ denied, 876 So.2d 75 (La. 2004). Petitioner raised additional issues in a state post-conviction application, and it was denied. Petitioner now seeks federal habeas corpus relief. For the reasons that follow, it is recommended that his petition be denied.

**Facts**

The evidence showed that Petitioner and four other men (Chevelle Hamilton, Curtis Monroe, Darrell Hollingsworth, and Shermoin Ellis) were hanging out at a neighborhood grocery store when the victim, Frederick Davis, drove up and tried to talk with Petitioner. Petitioner told police that he asked Davis to meet him at a house on Looney Street. There was animosity between Petitioner's group and Davis, with the group believing that Davis was

involved in a neighborhood robbery and drive-by shooting that targeted members of Petitioner's group.

The men met at a house on Looney Street, where the robbery and at least one drive-by shooting had occurred. Davis called for Petitioner to meet him at the edge of the driveway, but Petitioner insisted that Davis meet him under the carport. Davis complied, and a fight soon ensued between Davis and members of Petitioner's group.

Petitioner later told police that he attempted to break up the fight. At some point, Davis broke loose, and that was when Petitioner shot Davis with a pistol. Petitioner said Davis continued "tussling" with the other men, so he shot Davis again. Petitioner claimed his third shot was aimed at the ground, but there was evidence that Petitioner followed the instruction of a man who walked up on the scene and told Petitioner to shoot Davis the third time. Davis was pronounced dead at the scene.

Petitioner told police that, after the shooting, he broke down his gun into four pieces. He scattered the pieces in various bodies of water in the Shreveport-Bossier area. After a month-long investigation, Petitioner was arrested in Dallas, Texas and returned to Shreveport to face the second degree murder charge.

**Indictment**

Petitioner argued in his post-conviction application that the state court minutes did not reflect that any members of the grand jury were present during the return of the indictment or that the indictment was returned in open court. Petitioner based his claim primarily upon

state law, but he did make a reference to his rights to due process, thus potentially raising a federal issue that might be cognizable on federal habeas review. Tr. 462-63.

The minutes contain only the following information about the return of the indictment: "11/15/2000 TRUE BILL FILED. JUDGE R. EMANUEL". Judge Crichton, who ruled on the post-conviction application, found that "a review of the minutes reflects that the indictment was in fact returned in open court on November 15, 2000." Accordingly, he found the claim without merit. Tr. 502. The state appellate court agreed that the claim was factually meritless, finding: "The minutes show the indictment was returned in open court in Section 4 before Judge Leon Emanuel." Tr. 636. (The minutes actually reflect that the indictment was returned before Judge Ramona Emanuel.) The Supreme Court of Louisiana denied writs without comment. Tr. 661. No state court addressed the claim that members of the grand jury were not present at the return.

Petitioner has cited some Louisiana court decisions for the rule that if there is an entire absence of evidence of a return into open court the indictment is fatal. However, federal habeas court is concerned only with violations of federal constitutional provisions, not state law. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 479-80 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") And habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

With respect to Section 2254(d)(1), Petitioner has not identified any clearly established Supreme Court precedent that would require affirmative evidence of the presence of all grand jury members or that the indictment was returned in open court. The presence of all grand jury members is certainly not of constitutional dimension, as federal statutory law allows only the foreman or deputy foreman to make the return, and the Supreme Court held long ago that there is no requirement under the Fifth Amendment's grand jury clause that an indictment be presented by the grand jury "in body" to the court. Breese v. U.S., 33 S.Ct. 1 (1912).

Assuming there was a legal basis for the claim, it is foreclosed by the state court's factual finding that the indictment was returned in open court. The state court, which is familiar with its minutes system, found as fact that the minutes showed the indictment was returned in open court. This court cannot say that was an unreasonable determination of the facts in light of the evidence presented. Finally, the grand jury requirement is applicable to federal prosecutions, but it is not binding on the states. Campbell v. Louisiana, 118 S.Ct. 1419, 1423 (1998); Hurtado v. California, 4 S.Ct. 111 (1884). Accordingly, state law is the reference for determining the sufficiency of a charging instrument, and if the issue "is presented to the highest state court of appeals, then consideration of the question is foreclosed in federal habeas corpus proceedings." McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994).

**Right to Testify**

After the State rested, the trial judge, Judge Eugene W. Bryson, Jr., asked if the defense planned to introduce any evidence. Counsel said the defense had no potential witnesses other than Petitioner, and she asked for a moment to visit with Petitioner. The judge afforded a 10-minute recess so counsel could have "some time to discuss the possibility of him testifying or not testifying." When counsel returned, she said she had "discussed the matter with Mr. Pouncy, both just moments ago and prior to today, concerning his testimony. I have advised him it's my opinion, as his Attorney, he should not testify and he agrees that that is in his best interest." The court asked: "Mr. Pouncy, is that correct?" Petitioner replied: "It is correct. I choose not to testify." Judge Bryson went on to state that he understood Petitioner was choosing not to testify because he had prior convictions on which he would be subject to cross-examination. Defense counsel said that was one of the factors considered. The court again asked Petitioner if it was correct that he had been advised of his Fifth Amendment privilege and wished to "take it at this time." Petitioner replied: "Yes, sir." Tr. 351-52.

Petitioner argued in his post-conviction application that the judge erred when he probed Petitioner's right to testify, absent extraordinary circumstances warranting the inquiry. Petitioner alleged that this led him to improperly waive his right to testify. Tr. 463-66. Judge Crichton, who ruled on the post-conviction application, rejected this issue because the record showed that Petitioner "in open court" stated it was his choice not to testify. Tr.

502. The state appellate court agreed. Tr. 636. The state courts did not address the propriety of Judge Bryson's inquiry into the waiver.

The Supreme Court held in Rock v. Arkansas, 107 S.Ct. 2704 (1987) that every criminal defendant has the right to testify on his own behalf. Several circuit courts of appeals have since held that the right to testify can only be waived by the defendant himself, and not by his counsel. See e.g., Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997). Since Rock, lower courts have taken various approaches to ensuring that a defendant's right to testify is protected. Most courts hold that the trial judge is not mandated to ask the defendant directly about his choice not to testify unless there is some indication of a conflict between counsel and client or other special need to do so. Other courts and scholars have argued that a trial judge should protect the right to testify by requiring the defendant to state his waiver on the record when he chooses not to testify. The on-the-record waiver procedure helps avoid post-trial claims by the defendant that his counsel prevented him from testifying. Some courts and commentators criticize the on-the-record waiver approach because of fears that the judge's inquiry may inadvertently interfere in the attorney-client relationship or accidentally influence the decision of the defendant. The various views are discussed in Christopher Pape, Ineffective Assistance of Rule 1.2: Seeking an On-the-Record Waiver to Protect Defendant's Right to Testify, 35 J. Legal Prof. 437 (2011); Criminal Law-Right to Testify-7th Circuit Holds that Defendant's Waiver of the Right to Testify was Valid Despite District Court's Failure to Engage in an On-the-Record Colloquy Regarding the Decision, 121 Harv. L. Rev. 1660 (2008); and Timothy O'Neill, Vindicating the Defendant's Constitutional Right

to Testify at a Criminal Trial: The Need for an On-the-Record Waiver, 51 U. Pitt. L.Rev. 809, 838 (1990) (proposing a waiver colloquy between counsel and client to reduce judicial involvement).

To obtain relief on this claim, Petitioner must show that the state court's adjudication of the claim was contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States." Section 2254(d)(1). This refers to holdings of the Supreme Court as of the time of the relevant state court decision. Yarborough v. Alvarado, 124 S.Ct. 2140, 2147 (2004). A decision by a federal circuit court, "even if compelling and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1)." Salazar v. Dretke, 419 F.3d 384, 399 (5th Cir. 2005).

Petitioner cites no Supreme Court decision that prohibits the type of waiver inquiry conducted in this case, and he admits that lower courts "are not in uniform agreement on whether such a colloquy from the trial court is advisable." The Fifth Circuit has stated that careful defense counsel will routinely advise the trial judge out of the jury's presence that the defendant will or will not testify and whether it is contrary to counsel's advice. "Even without its initiation by counsel, careful trial judges will similarly inquire if the defendant understands his right to testify." U.S. v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002). Some courts may not approve of a judicial inquiry into the waiver, but absent clearly established Supreme Court precedent to indicate that Judge Bryson's inquiry was unconstitutional, this claim does not provide a basis for habeas relief. See Knowles v. Mirzayance, 129 S.Ct. 1411,

1419 (2009) ("this Court has held on numerous occasions that it is not " 'an unreasonable application of clearly established Federal law' " for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.").

Petitioner raises a separate but related claim that his counsel denied him his right to testify. Petitioner does not, however, articulate any facts in his petition or memorandum to demonstrate how counsel prevented him from testifying. The record suggests that Petitioner was in complete agreement with the decision. Furthermore, the prejudice prong of the Strickland test applies to such claims and requires a showing of a reasonable probability that, absent counsel's error, the jury would have had a reasonable doubt about guilt. Mullins, 315 F.3d at 456. Petitioner has not stated what he would have testified to that might have changed the verdict, so there is no factual basis on which prejudice could be found.

**Ineffective Assistance: No Objection to Improper Notice of Confession**

Louisiana Code of Criminal Procedure Article 768 provides: "Unless the defendant has been granted pretrial discovery, if the State intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the State's opening statement." The article adds that failure to do so makes the statement inadmissible. Petitioner claims that his counsel was ineffective because she did not object to the introduction of a statement on the grounds that improper notice was given.

The challenged statement was recorded in Dallas soon after Petitioner was arrested. The State filed a notice under Article 768 that referenced attached police reports and gave notice the State intended to introduce at trial any statements by Petitioner that were referred

to in the reports. Also attached to the notice was a complete transcript of the statement taken at the Dallas County jail on October 13, 2000. Tr. 110.

Petitioner complains that counsel should have objected because the text of the notice itself did not identify the parties to the statement or the place and date of the statement, which Petitioner says is required by Louisiana caselaw that has interpreted Article 768. Judge Crichton rejected this claim because the minutes reflected (1) the notice was served and (2) a hearing was held the same day notice was given on a motion to suppress regarding the statement. The statement was explored in detail at the hearing and ruled to be voluntary. Tr. 502. The appellate court agreed with the rejection of this Strickland claim. Tr. 636.

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if she made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. 104 S.Ct. at 2068. For habeas purposes, the test is whether the state court's decision – that the petitioner did not make the Strickland showing – was so incorrect as to be contrary to, or an objectively unreasonable application of, the standards provided by Strickland's clearly established federal law. Wiggins v. Smith, 123 S.Ct. 2527, 2535 (2003); Williams v. Taylor, 120 S.Ct. 1495 (2000).

The notice, as well as the attached complete transcript of the statement, provided all possible notice that could have been given with regard to the statement. The statement and the circumstances surrounding it were explored before trial at a hearing, so it would have been frivolous for counsel to object at trial that she received improper notice of intent to introduce the statement or argue, as Petitioner does here, that the defense was prejudiced and surprised by the offering of the statement. Counsel does not act deficiently by failing to raise a meritless objection. Paredes v. Quarterman, 574 F.3d 281, 291 (5th Cir. 2009).

**Free and Voluntary Statement**

Petitioner argued in his post-conviction application that the State failed to lay a proper foundation for the admission of his statement by showing that it was made freely and voluntarily and not under duress or other improper motive. Petitioner did not articulate any particular facts to suggest that the statement was involuntary or otherwise raise any specific arguments on the issue. He simply made a conclusory assertion that the court's finding was wrong and that trial counsel was ineffective for not objecting to the introduction of the statement on the grounds that it was not free and voluntary. Tr. 470-71.

Defense counsel did file a motion to suppress the Dallas statement on the grounds that Petitioner did not make a knowing and voluntary waiver of his rights before questioning and that the statement was not freely and voluntarily given. Tr. 108-09. The trial court held a hearing at which Shreveport Detective John Eatman, who took the statement, testified that Petitioner was read a standard Miranda waiver rights card, after which Petitioner initialed and signed the card to indicate a waiver. The transcript of the statement shows that recording

began at 11:00 and stopped at 11:14. Tr. 111, 125. The recording resumed at 11:35, at which time Eatman stated that Petitioner had asked some questions after the first interview and said he wanted to start the tape over and "tell how it really went." Petitioner was not read his Miranda rights a second time, but he did say at the beginning of the second session, "This is a voluntary statement, I'm doing this on my own free will." Tr. 126.

Defense counsel explored with Eatman the conversation that happened between the two recorded sessions. She argued to the court that the 21-minute delay between sessions required a new administration of the Miranda rights. She made no argument that the statement was otherwise involuntary, and there was no evidence to support and such contention. Tr. 235-45. Counsel briefed the issues for the court.

Judge Bryson found no indication of wrongdoing by the police officers or that Petitioner did not understand his rights. He noted that neither Petitioner nor the officers ever left their seats during the 21-minute non-recorded time, and they continued to talk about the same matters, so that the second recorded session was really a "continuation of one statement." Tr. 248-52. Petitioner's post-conviction application presented a general attack on the voluntariness of the statement, without reference to the Miranda issue raised by counsel. Judge Crichton summarily rejected the claim because the statement had been ruled to be free and voluntary, and the state appellate court did the same. Tr. 502, 636.

A confession must be voluntary to be admissible, and a judge must make a determination of voluntariness before the confession is admitted to the jury. Jackson v. Denno, 84 S.Ct. 1774 (1964). Such a finding was made, and there is no basis to question it.

A suspect also has a right to be informed of his right to remain silent when faced with custodial interrogation, but he may waive that privilege if done so voluntarily, knowingly, and intelligently. Miranda v. Arizona, 86 S.Ct. 1602, 1612 (1966).

"While the passage of time between a defendant's receipt of his Miranda rights and his confession may be a factor in determining the voluntariness of the confession, the passage of time is not itself necessarily sufficient to render Miranda warnings ineffective." U.S. v. Clay, 408 F.3d 214, 222 (5th Cir. 2005) (Miranda warnings given two days earlier at time of arrest were effective at later statement), citing Evans v. McCotter, 790 F.2d 1232, 1237-38 (5th Cir. 1986) (rejecting argument that the passage of three hours after defendant was given Miranda warnings rendered later statements involuntary). See also Mitchell v. Gibson, 262 F.3d 1036, 1057-58 (10th Cir. 2001) (noting that numerous courts have rejected the argument that the passage of time alone invalidates previously given Miranda warnings).

Petitioner's federal petition continues the general attack on the voluntariness finding, with no emphasis on the Miranda issue pressed by counsel. Petitioner has not pointed to anything in the record that would undermine the state court's findings on this issue or suggest that counsel was in any way ineffective with regard to this isse. The state court adjudication was in line with federal circuit court jurisprudence and certainly did not run afoul of clearly established Supreme Court precedent.

**Reasonable Doubt Instruction**

Petitioner argued in his post-conviction application that the trial judge denied his right to due process when he did not instruct the jury that reasonable doubt can be found from a

"lack of evidence" in the case. Tr. 471-72. The State responded with a memorandum and pointed out that the judge had instructed the jury "you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence." Tr. 202, 500. The state courts summarily rejected the claim based on that evidence. Tr. 502-03, 637.

Petitioner has continued to press the issue before this court, but his memorandum does not acknowledge or address in any way the fact that the record squarely defeats the claim. It is the assertion of frivolous claims like this that cause delay in the assessment of habeas petitions. Once a claim has been shown to be baseless, Petitioner or his inmate counsel should drop that claim so that the court may more rapidly consider the merits of other claims that could result in relief being granted.

**Ineffective Assistance of Counsel**

Petitioner's final claim invokes issues discussed above and presents them as an ineffective assistance of counsel claim. He asserts that counsel was ineffective when she did not object to the lack of notice of intent to introduce the Dallas statement, did not object to the means by which the indictment was returned, and did not object to the reasonable doubt instruction. For the reasons discussed above, none of those objections would have possessed any merit, so counsel was not ineffective for not making them.

Petitioner does not mention it in the heading for the final claim, but the body of his memorandum also asserts a claim that counsel "failed to conduct a basic investigation and interview the prosecution witnesses, and failed to pursue her discovery demands." He

suggests that had she done so, "crucial information" could have been gained that would have allowed a viable defense.

A habeas petitioner who alleges a failure to investigate on the part of his counsel "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." Gregory v. Thaler, 601 F.3d 347, 352 (5th Cir. 2010). To prevail on an ineffective assistance claim based on uncalled witnesses, the applicant must name the witness, demonstrate that the witness would have testified, set out the contents of the proposed testimony, and show that the testimony would have been favorable. Id.

Petitioner offers nothing but conclusory assertions that more investigation, discovery, or interviews would have helped the defense. Petitioner even admits that "on the available record, this Court cannot properly conclude" that counsel's conduct fell below the applicable standard "without conducting an evidentiary hearing." A Strickland claim asserted on habeas must be adjudicated under Section 2254(d)(1), and the petitioner must overcome the limitations of that statutory standard "on the record that was before the state court." Cullen v. Pinholster, 131 S.Ct. 1388 (2011). The Fifth Circuit recently reversed a district court for holding a hearing to flesh out such a claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011). Petitioner cannot meet his burden on the state court record, so this final claim should also be rejected.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be **denied**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 24th day of August, 2011.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE